**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard K. Fabrizio, | ) CV 11-02147-PHX-FJM |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Michael J. Astrue, | ) |
| Defendant. | ) |

Plaintiff appeals from the Administrative Law Judge's ("ALJ") decision to deny his application for social security disability benefits. We have before us plaintiff's opening brief (doc. 11), defendant's response (doc. 14), and plaintiff's reply (doc. 20).

A court may set aside a denial of benefits "only if it is not supported by substantial evidence or if it is based on legal error." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Id. (citation omitted). We may only affirm the ALJ on a ground upon which she relied. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**I**

Plaintiff was born in 1963. He previously worked as an auto body technician, but stopped working due to panic attacks. Plaintiff submitted an application for disability benefits on August 6, 2008, alleging an onset date of December 1, 2007. His application was

1   initially denied. The ALJ held a hearing on July 13, 2010, at which the plaintiff and a
2   vocational expert ("VE") testified. The ALJ denied plaintiff's application on October 12,
3   2010. The Appeals Council denied plaintiff's request for review on September 1, 2011,
4   rendering the ALJ's decision final.

5       The ALJ followed the Social Security Act's five-step procedure to determine whether
6   plaintiff is disabled. See 20 C.F.R. § 416.920(a)(4). First, the ALJ determined that plaintiff
7   meets the status requirements of the Social Security Act and had not engaged in substantial
8   gainful activity since the date of alleged onset. At step two, the ALJ found that plaintiff has
9   the severe impairment of mood disorder/schizoaffective disorder. Next, the ALJ determined
10  at step three that plaintiff does not have an impairment or combination of impairments that
11  meets or equals a listed impairment. The ALJ proceeded to calculate the plaintiff's residual
12  functional capacity ("RFC"). She found that plaintiff has the RFC to perform a full range of
13  work at all exertional levels, but was restricted to performing simple and routine work with
14  minimal interpersonal contact. Based on this RFC, the ALJ concluded at step four that the
15  plaintiff is unable to perform his past relevant work.

16      The ALJ consulted a VE at the hearing. The VE testified that a person limited to
17  plaintiff's RFC could perform the jobs of a janitor, assembly worker, and quality control
18  inspector. The ALJ concluded at step five that plaintiff is not disabled because there are a
19  significant number of jobs in the national economy that he can perform.

**II**

21      Plaintiff argues that the ALJ erred in assigning weight to the opinions of Nurse
22  Practitioner ("NP") Kathe Reitman, Dr. Stephen Fair, and Dr. James Huddleston.

23      First, plaintiff argues the ALJ erred by giving NP Reitman's diagnosis of bipolar
24  disorder and opinions about plaintiff's functional capacity little weight.[1] NP Reitman first
25  completed a medical assessment of plaintiff's ability to perform work-related activities in

---

[1] Plaintiff does not, however, argue that it was error for the ALJ to conclude that bipolar disorder was not a severe impairment.

- 2 -

March 2009. NP Reitman opined that plaintiff was severely impaired in the areas of constriction of interests and performance of complex tasks. Moreover, NP Reitman found that plaintiff was moderately severely impaired in the areas of ability to relate to others, restriction of daily activity, personal habits, ability to respond appropriately to co-workers, respond to work pressures, and perform varied tasks. She also concluded that plaintiff was moderately impaired in his ability to understand, carry out, and remember instructions. Tr. at 282-83. A second evaluation completed in September 2009 is similar, except that NP Reitman opined that plaintiff's ability to respond appropriately to co-workers was severely impaired. Tr. at 306-07.

Opinions of treating doctors are generally favored over non-treating doctors. Orn, 495 F.3d at 631. As the ALJ correctly noted, however, a nurse practitioner is not an acceptable medical source. SSR 06-03p, 2006 WL 2329939 at *2 (Aug. 9, 2006). Only acceptable medical sources are considered treating sources whose medical opinions can establish the existence of an impairment. Id. Thus, NP Reitman's diagnosis of plaintiff cannot establish the existence of an impairment. However, information from "other" medical sources - including nurse practitioners - may "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Id. If the ALJ wishes to disregard NP Reitman's findings, she must give specific reasons that are germane to NP Reitman for doing so. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). One example of a germane reason to discount the opinion of an "other" medical source is when that opinion conflicts with medical evidence. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Here, the ALJ did not err by giving little weight to NP Reitman's references throughout her treatment notes to bipolar disorder. Not only did the ALJ conclude that NP Reitman was not an acceptable medical source, she concluded that the weight of the medical evidence rejected a bipolar disorder diagnosis. Dr. Huddleston examined plaintiff in December 2008 and diagnosed him with "Mood Disorder NOS," noting that the symptoms reported by plaintiff were "inconsistent with diagnosis of a bipolar disorder." Tr. at 238-39.

1 Dr. William Snyder reviewed the record in January 2009, concluding that the evidence
2 supported a diagnosis of "Mood Disorder NOS." Tr. at 256. And although the ALJ gave
3 weight to the diagnosis of panic attacks and anxiety by plaintiff's treating primary care
4 physician, Dr. McCarty, the ALJ rejected his later diagnosis of bipolar disorder as
5 inconsistent with the weight of the other medical evidence in the record. Tr. at 23-24.

6 The ALJ also gave several germane reasons for giving little weight to NP Reitman's
7 opinions regarding plaintiff's ability to function. Specifically, she noted that NP Reitman's
8 conclusions that plaintiff was severely or moderately severely impaired in several areas of
9 functioning conflicted with plaintiff's ability to live alone, maintain his own household,
10 obtain his own food, and solicit yard work. The ALJ also noted several periods of time
11 where plaintiff was only being treated by NP Reitman every three months, and noted that the
12 latest treatment notes showed that some areas, such as showering and socialization had
13 improved. Tr. at 24. The ALJ did not err in evaluating the opinions of NP Reitman, a non-
14 acceptable medical source.

15 Next, plaintiff argues that it was error for the ALJ to assign great weight to Dr. Fair's
16 opinion, but leave some of his proposed limitations out of the RFC assessment without
17 comment. Dr. Fair concluded that plaintiff was markedly limited in the ability to carry out
18 detailed instructions, and was moderately limited in several areas, including maintaining
19 concentration and interacting appropriately with others. Tr. at 218-19. Based on these
20 limitations, Dr. Fair concluded that plaintiff "would be able to understand and remember
21 simple tasks," "could handle simple work," but should have "limited contact with others."
22 Tr. at 220. At the hearing, the ALJ asked the VE whether there was work available for
23 plaintiff if he were "restricted to simple tasks in a routine work setting with limited contact
24 with others" (defined as minimal interpersonal contact). Tr. at 47. The VE testified that the
25 jobs of janitor, assembly worker, and quality control inspector were available. Tr. at 47.
26 Plaintiff's lawyer asked the VE whether a person with all of the limitations noted by Dr. Fair
27 in the first portion of his report could work, and the VE testified there were no jobs available.
28 Tr. at 49-50. According to plaintiff, it was error for the ALJ to omit significant limitations

1 recommended by Dr. Fair from the RFC assessment.

2     We disagree with plaintiff's conclusion that several limitations proposed by Dr. Fair were omitted from the RFC assessment. Although Dr. Fair believed plaintiff had a number of areas of impaired functioning, he ultimately opined that - given these limitations - plaintiff could still "understand and remember simple tasks," "could handle simple work," but should have "limited contact with others." Tr. at 220. See also Tr. at 304 ("The claimant is able to perform simple, routine [work] in a setting with limited contact with others."). These limitations were all included in the ALJ's RFC assessment, which stated that plaintiff can "perform simple, routine work, but should be limited to minimal interpersonal contact [] in the workplace." Tr. at 19. This was the hypothetical the ALJ posed to the VE, who concluded based on that RFC that a number of jobs were available.

12     Plaintiff argues that the ALJ erred in assigning Dr. Huddleston's opinion any weight. After interviewing plaintiff and administering tests, Dr. Huddleston invalidated the test results, as the discrepancy between the test results, plaintiff's conduct during the interview, and results of the Rey 15 Memory Test suggested to Dr. Huddleston that plaintiff was malingering. Accordingly, Dr. Huddleston did not provide any opinions regarding plaintiff's functional capacity. He did, however, conclude that plaintiff's symptoms were inconsistent with a diagnosis of bipolar disorder. Tr. at 238. This is the opinion that the ALJ gave "greater weight" to, because of its consistency with the other medical evidence. Tr. at 23. The ALJ did not err in assigning some weight to Dr. Huddleston's opinion.

## III

22     Next, plaintiff argues that the ALJ failed to articulate sufficient reasons for rejecting his subjective complaints regarding the severity of his symptoms. The evaluation of a claimant's subjective symptoms requires a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must decide if the plaintiff "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citation omitted). If there is, then the ALJ can only reject the plaintiff's testimony "upon (1) finding evidence of malingering, or (2)

1  expressing clear and convincing reasons for doing so." <u>Benton ex rel. Benton v. Barnhart</u>,
2  331 F.3d 1030, 1040 (9th Cir. 2003).  When weighing credibility, the ALJ can consider
3  inconsistencies between plaintiff's testimony and his conduct, daily activities, and work
4  record.  <u>Thomas</u>, 278 F.3d at 958-59.  "If the ALJ's credibility finding is supported by
5  substantial evidence in the record, we may not engage in second-guessing." <u>Id.</u> at 959.

6  Here, the ALJ noted that plaintiff's symptoms, to the extent they were inconsistent
7  with the RFC, were not credible.  The ALJ discussed Dr. Huddleston's findings that plaintiff's
8  comprehension, vocabulary, and memory appeared functional during the clinical interview,
9  which did not comport with the scores during the memory testing.  The ALJ then discussed
10 the administration of the Rey 15 memory test, the results of which (when combined with the
11 other findings), supported a theory of malingering, which undercut plaintiff's claims that he
12 suffered from a learning disability.  In addition, the ALJ found that plaintiff's self-care
13 activities, efforts in managing his finances, and living alone were inconsistent with test
14 results.  <u>Tr.</u> at 22.

15 The ALJ did not rest her entire credibility determination on a finding of malingering.
16 She also noted that plaintiff has reported that his symptoms have improved with medicine,
17 and noted that plaintiff admitted he was able to attend to his hygiene if needed (for example,
18 if heading to a job interview).  These reasons are supported by the record and are stated "with
19 enough specificity to allow a reviewing court to confirm that the testimony was rejected on
20 permissible grounds and not arbitrarily."  <u>Benton</u>, 331 F.3d at 1041.

21                                                              **IV**

22 Finally, plaintiff argues that the ALJ improperly discounted the third party statement
23 given by plaintiff's mother.  Lay testimony from a family member must be taken into
24 account.  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1114 (9th Cir. 2012).  The ALJ must give
25 germane reasons for discounting the testimony.  <u>Id.</u>  Here, the ALJ concluded that the
26 statements given by plaintiff's mother were inconsistent with plaintiff's reported activities and
27 with the objective medical evidence, and considered their close relationship and the mother's
28 possible "biased motivation" to assist his application.  <u>Tr.</u> at 24.  The ALJ offered germane

1 reasons for affording the mother's statements little weight. We conclude that based on the
2 evidence in the record, the ALJ did not err in assessing the statements of claimant's mother.
3 See Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (not error to reject lay witness
4 testimony, when ALJ found that statements were inconsistent with plaintiff's presentation to
5 doctors and lay testimony possibly influenced by a desire to help based on the close
6 relationship with plaintiff).

**V**

In sum, we conclude that the ALJ's decision that plaintiff is not disabled is supported by substantial evidence in the record. Therefore, **IT IS ORDERED AFFIRMING** the decision of the Commissioner denying disability benefits. The Clerk shall enter final judgment.

DATED this 21st day of August, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge